Mr. Harbort, am I saying that right? That's right, Your Honor. Okay. And you reserve three minutes for rebuttal, correct? That's correct. All right. You may proceed. May it please the Court, my name is Samuel Harbort and I represent Petitioner Terrence Enoh. The question in this case is whether Mr. Enoh is entitled to a new asylum hearing where after the removal order became final, the United States government disclosed directly to Cameroon's government Mr. Enoh's Pledge of Allegiance to the SCNC, an independence  In other words, our government put an explosive document directly in the hands of a well-documented persecutor, branding Mr. Enoh as a rebel and a traitor in the eyes of Cameroon's government. Now, we're not asking this Court at this time to directly order Petitioner eligible for asylum. Mr. Enoh merely seeks a new asylum hearing so that he can get into immigration court. The previous asylum, to the extent that this information was brought to the attention of the immigration judge of the BIA, previously it was ruled on in the context of whether or not he was able to make an asylum claim as opposed to a new risk, whether the evidence just simply indicated that he was making an asylum claim as opposed to a new, an independent risk of persecution based upon the receipt of the card itself. Is that right? In other words, the card was before the immigration, before the DHS, right? Yes, Your Honor. So the card was submitted by Mr. Enoh as the chief exhibit in support of his original asylum claim. Right. Now, that claim was denied. The removal order became final. After that happened, DHS, in preparing to send Mr. Enoh, to remove Mr. Enoh to Cameroon, had to arrange for travel documentation. Right. And so that information was sent to the Cameroon. Was sent to the Cameroon embassy. That's right, Your Honor. And at that point, Mr. Enoh, after he learned of the disclosure, Mr. Enoh moved to reopen his final removal proceeding, which you're allowed to do to raise a new asylum claim based upon new evidence. And he submitted the card to the BIA, which ruled in its initial motion for reopening that it had reviewed all of the documents submitted by Petitioner and the government, which necessarily included the card, and found that none breached the confidentiality regulation, and that none gave rise to a prima facie case for asylum relief, which is the standard that a Petitioner has to overcome to reopen a final removal proceeding. So at that point, Mr. Enoh moved for reconsideration before the Board, arguing a classic basis for reconsideration, as this Court said in its Lew decision, which is where the Board overlooks a critical aspect of the case. And his reconsideration motion put the SCNC cards disclosure front and center. He mentioned it 16 different times in the motion for reconsideration, and the Board still disregarded it, repeated its prior conclusory analysis that it had reviewed all documents, none breached the government's confidentiality regulation, none gave rise to a prima facie case. And so that's how this case comes to this Court. Sotomayor, they never singled out this document and determined whether or not this was a substantial risk that would warrant asylum, the disclosure would warrant asylum. Your Honor, the BIA did not engage in any reasoned analysis of that question. It did state at a high level that it had reviewed everything, and nothing that was disclosed gave rise to the prima facie case for asylum. So we think that was an error, and that this Court should review and reject it. But you're right, Your Honor, that it didn't specifically single it out. And that alone was a serious legal error. I think as this Court recognized in its Pura de Sova decision that when presented with substantial arguments, the Board has an obligation to engage in a considered, thorough examination of those arguments. So given that, should it be sent back to the Board with that instruction that it has to specifically consider this for the pending motion, as opposed to concluding that the Board should send it to the IJ? I think not, Your Honor. And the case I would point the Court to is its Pura de Sova decision, which I think is really on all fours with this case. I'm sorry, you mentioned it, your voice, I didn't hear the name. The Pura de Sova decision, which we rely heavily on in our briefing, and I can point the Court to the specific citation, but that arose in the exact same posture. So there, just as here, so it's 420 F. 3rd. 70, so there, just as here, Petitioners moved to reopen a final removal proceeding based upon a new asylum claim grounded in new evidence, and there, just as in this case, the BIA brushed aside the claim in what this Court called overly perfunctory analysis. But I think the critical point was this Court didn't stop there. It went on to hold that because the prima facie case was so clear-cut on the record, that had the BIA engaged in the proper inquiry, there was only one possible conclusion, which was that a new asylum hearing was necessary before the IJ. And I think that makes a lot of sense because the prima facie case standard is not unduly burdensome. What this Court said in that same case in Pura de Sova is the showing necessary is merely a reasonable possibility, a reasonable chance of success in ultimately obtaining asylum relief. And Mr. Eno has plainly made out, plainly satisfied that standard here, where, I mean, there are really two pieces of the puzzle. The first is, is there a reason to think the government of Cameroon would single out Mr. Eno for persecution? That is clearly satisfied because our own government gave the government of Cameroon exactly the reason to single him out. It indisputably disclosed the SCNC card where Mr. Eno's picture appears and where he professes his allegiance, including a pledge to fight and even die for this organization if necessary. That was sent directly to Cameroon's government, the persecutor that Mr. Eno fears. So that piece of the puzzle, I think, is satisfied. And the second is, is there a reason to think that the government of Cameroon would persecute those it perceives as affiliated with this independence movement? And again, I think there's overwhelming record evidence here that that is the case. Alitoson But the bottom line is, so you're saying that we should remand with instructions to send it back to an immigration judge for a new hearing. Yes or no? Fisher Essentially, yes, Your Honor. That is our request. I think in terms of what the court would actually write in its opinion, I think you can follow, again, the Porra da Sova case where what this court said was, Petitioner has satisfied the prima facie case standard. And then you remanded to the board with instructions for further proceedings consistent with this court's opinion. What will happen as a practical matter if the court does that is the board will, in short order, reopen the case and send it to the immigration judge for the asylum hearing that we think is essential here. Alitoson All right. You've reserved three minutes. So we'll now hear from Ms. McKinney. Ms. McKinney Good morning. May it please the Court. This court should remand this case to the board for it to decide in the first instance whether the submission of Petitioner's political membership card to the Embassy of Cameroon was a breach of confidentiality in violation of the confidentiality regulations. An agency may voluntarily seek to remand a case, and courts should ordinarily permit the agency to voluntarily remand in the absence of countervailing reasons. How does your proposed relief differ from your adversary's? Ms. McKinney And this was the remand we requested in our motion and the remand we requested in our breach, in our brief, was similar to what Your Honor was indicating, which was remand for the board for it to specifically decide whether submission of the card was a breach of the regulation. Justice Sotomayor So you did, that's exactly what you sought in the motion to remand and a three-judge panel here on July 29th, 2019, denied the motion to remand saying because the BIA has had multiple opportunities to address the issues raised in these petitions. Isn't that decided then in this case? Ms. McKinney Respectively, Your Honor, no. The motion was denied, but that doesn't preclude the agency from renewing the request in its brief or remand is the ordinary remedy in agency cases. Justice Sotomayor Let's assume it was remand, but why would it be confined to the question of breach of confidentiality? Why wouldn't it also be involved why wouldn't you also want them to look at whether or not there is an independent risk, confidentiality or not, that this gentleman will be persecuted based upon Cameron's possession now of his identity card? Ms. McKinney Perhaps I misspoke on that one. I think the fact that the government was requesting remand to address the issue of the card, which the parties agree was not specifically discussed in the agency decision denying reopening or denying reconsideration. The government is not requesting a limited remand specifically to that issue. We were just requesting remand so that the agency could address that as a minimal fine, as a minimal And on this record, could the agency say no new hearing is necessary? Ms. McKinney Could they say no hearing is necessary? They could potentially. There would be several different findings that the agency would need to reach. The agency would need to specifically find that there was actually disclosure. I think we noted in the brief that this is what DHS's submission to the board indicated, but the board didn't specifically discuss that. And then they didn't specifically discuss whether that disclosure was a breach or a violation. And then if found, the regulation itself doesn't indicate a remedy, but this court in Lynn indicated that the remedy would then be the opportunity to present your case and show how the violation once found with the other evidence in the record or whatever new evidence the petitioner would like to submit, whether that gave rise in this instance on the motion to a prima ficia case. And while the board in this instance did state that the prima ficia case had not been shown, it did so after initially finding no violations. So the agency has yet to rule in the first instance whether a prima ficia case has been shown, assuming a violation. So this court should apply the ordinary remand rule and remand for the agency to decide this in the first instance. This is similar to, for example, the Schau case, 546F3rd 138 that the board was citing. In that case, it was noted that the case presented itself to the court back up following an initial remand to the agency, where it was not apparent that the board had paid attention to specific exhibits in the record. That might be similar here, where although the board has had an opportunity to look at the card, there's no indication that the board has discussed the card or made any findings with respect to the significance of the disclosure of the card. That's particularly important here. Pursuant to the Supreme Court decision in Ventura and Gonzales, the ordinary remand rule would apply. This court must judge the agency action on the grounds invoked by the agency. And here, there's just no discussion. Both parties agree that the board did not precisely consider or rule upon whether the disclosure of the card was a breach. Sotomayor, I'm just trying to understand where the daylight is between you. Is one that you just wanted to go back and the board will decide whether there's going to be a hearing, or that we should say to the board, hold a hearing? Yeah, I think the parties actually agree on many issues. The point of disagreement might be the scope of remand. We would like remand for the board to decide whether there was a violation, and if so, whether that gives rise to a prima facie case. And I believe Petitioner was asking this Court to decide both of those issues in the first instance. It's not just a disclosure. It's not the violation of a disclosure problem. It's of a confidentiality. It's the actual production of the card, regardless of whether or not that violated some requirement. And under those circumstances, why isn't it fairly obvious that there ought to be a hearing as to whether or not there is a new risk, an independent risk, that warrants asylum? As a matter of administrative law, ordinarily this would go back for the board, for it to decide the prima facie case issue, and if shown, then the board would order. But the board didn't have this chance. They just didn't do it, right? Well, respectfully, Your Honor, that might be true in every case where the board is deciding a motion to reconsider. Because on the initial motion, actually the initial motion that the Petitioner presented to the board was not arguing that the card was the violation. The initial motion to the board was actually arguing that disclosure of the IJ and BIA decisions led to an inference that he had applied for asylum. So that was the issue with the initial motion. The issue with the card came up with when DHS responded to that motion and attached the card and indicated that that had been the enclosure to the submission to the embassy. So the argument, first motion to reopen, was the argument in the motion, at least, was the board was not going to find that a prima facie case was made and it's got to get a new hearing? I think it's a ‑‑ these cases usually are intertwined with factual issues concerning adverse credibility. That was the case in this Court's decision in Lynn, in the Eleventh Circuit's decision. What does that have to do with this here? I mean, here we know, there's no dispute, that the card was turned over to the Cameroon embassy. Maybe innocently, maybe not. But the reality is that wasn't true when this whole process began. The board was apprised of that in a request to reopen and said no. So what more do we need to send it back for? I think the board was apprised of that in the motion to reconsider and we're requesting that the Court send it back for the board to specifically address the card. And as far as adverse credibility ‑‑ There was some indication here that there might be a credibility as to whether or not he was really a member of this group or something like that. That's irrelevant. Because we have told Cameroon that he is a member by giving him ‑‑ by handing the card back. Whether or not he is a member or not, we've told them that. And so that's the risk, it seems now, that he faces. And it seems to me there's got to be ‑‑ this has got to be heard on that basis for that particular issue. We can't send back kind of a vague, vague remand for further proceedings order. They have to focus on the card and they have to focus on the fact that the card informed Cameroon with our complicity that he was a member of this ‑‑ of the group. It's just the government's position that deciding that issue, the impact of the previous finding that he wasn't credible or the previous finding that the card was inauthentic is best handled, that kind of fact-specific question, best handled by the board, specifically confined if the court directs remand back for the board to decide. How is his credibility at issue here? How was it at issue? How is it? Why should ‑‑ Credibility can still be at issue even if a violation of confidentiality is found. I'm saying that our government told the Cameroon government that he was a member of the opposition group, which is banned in that country and is subject to persecution. That doesn't involve his credibility at all. The question would still ‑‑ you would still have to analyze the prime infatia case considering all the evidence of the record. Okay. I'm sorry. I didn't mean to interrupt you. No, thank you. If the court has no further ‑‑ 46 seconds left. Thank you. The government requests that this court remand the case to the board. Okay. Thank you. All right. Mr. Harbert. Your Honor, just a few brief points. First of all, as Judge Sullivan indicated, the prime infatia case is absolutely clear here. And it is not nearly so factual as counsel for the government indicated. Judge Walker was absolutely correct that there is no credibility issue in this asylum claim. Mr. Reno's claim is based on purely objective evidence, A, that his card was disclosed, which the government does not dispute, and conceded in sworn statements before the BIA. It was conceded, but then counsel, when I said what would happen, the first thing she said was the question would be whether disclosure was made. Can that be contested at this point? No, Your Honor. It's completely incontestable. What should our order say? Your Honor ‑‑ Remand. It looks like both of you want to do. What should the order say? The order should recognize Mr. Reno's ‑‑ No, with exact words. Could you tell us what that ‑‑ Sure. We remand for what? We remand for the board to reopen the case so that a new asylum hearing can be held before the immigration court. Any mention of the card? Yes, Your Honor. There's a couple of other petitions or arguments being made here about changed conditions about the plight of Christians in Cameroon. You're saying you get a new hearing and you get to just argue everything all over again? Your Honor, so the BIA has a well-established precedent that when a case is reopened for one purpose, it's an all-purpose reopening and that any new arguments can be raised on or any further arguments can be raised on remand to the immigration judge. And we actually agree on this point with the government. The government has acknowledged in its brief that if this court remands on any basis on the political asylum claim, the other claims ‑‑ So if we were to specify the card as a basis for reopening, that might narrow the ‑‑ they might misconstrue that as a kind of a narrower remand than really is appropriate? I think it's unlikely, but it's possible. I would urge the court in its opinion to recognize that there was a breach of confidentiality here and that the prima facie case is satisfied. That's what the court recognized in its Pura de Sova decision. And the order language that I just offered to Judge Walker, I think, would be our kind of ideal language. But the court did not provide that level of detail, I think, in its Pura de Sova decision. All this court said was prima facie case satisfied, remanded to the board for further proceedings is consistent with this opinion, and the board will know what to do with that. But if the court wants to help us out as much as possible, our ideal ask would be to specify that the case should be reopened for a new asylum hearing. All right. Thank you. I'm going to just ask Ms. McKinney to just respond to that point, just so I'm clear. So you agree that if we remand for purposes of a hearing or new hearing on the persecution related to the disclosure of the membership card, that that hearing should then also allow the petitioner to raise issues about change, country, circumstances, et cetera? I believe that what this court's decision and Lynn said was that the petitioner would be allowed to present new evidence on remand, establishing their claim for asylum. So I don't believe that the Lynn's court decision would have been like a limited-scope remand. Also, another point is that once the board did reopen, the other decisions concerning the Christianity claim would be rendered non-final in any event, because they would no longer be a final agency decision. And also just one point back on your point. The government wasn't arguing that the disclosure didn't happen. I think the government conceded before the board that it happened. What the government was arguing is merely the administrative law principle, that it hasn't been found, and all the subsequent findings then did not appear to be tethered to a finding that there was a disclosure and a briefage. Thank you. All right. Thank you both. We'll reserve. And I think that does it for today. We've got two other cases on submission, so we'll reserve on those as well. Thanks very much. Have a good day. Thank you.